STATE v. HUNT. (No. 1973.)

(Court of Civil Appeals of Texas. Texarkana. Oct. 31, 1918. Rehearing Denied Nov. 7, 1918.)

1. TAXATION ⬅⬤➡637—DELINQUENT TAXES— PROCEEDINGS FOR JUDGMENT — CONDITION PRECEDENT.

Under Acts 34th Leg. c. 147, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 7687a), the tax collector must mail to the address of the record owner of land which was delinquent a notice showing the amount of taxes appearing delinquent according to the records before the state can maintain an action to recover such taxes.

2. TAXATION ⬅⬤➡637 — DELINQUENT TAXES — RECOVERY—NOTICE AS PREREQUISITE.

Under Acts 34th Leg. c. 147, § 2 (Vernon's Ann. Civ. St. Supp. 1918, art. 7687b), declaring that it shall be the duty of tax collectors to rely on the delinquent tax record, it is sufficient for tax collector, in mailing notice of delinquent taxes, to send notice to one who appeared to be owner of land in delinquent records, and it is no defense, in action to recover such delinquent taxes from one who subsequently became owner of land, that his title appeared upon county records.

3. TAXATION ⬅⬤➡501—LIENS.

The general rule is that taxes are never a lien on property, unless expressly made so.

**4. TAXATION ⬤⟿507 — POLL AND PERSONAL PROPERTY TAX—LIEN ON REALTY.**

Under Const. art. 8, § 15, and Vernon's Sayles' Ann. Civ. St. 1914, art. 7528, poll taxes and personal property taxes do not become a lien on the real property of the person against whom they were assessed, and cannot be enforced against a subsequent grantee of such property.

Appeal from District Court, Cass County.

Action by the State of Texas against Goode Hunt. From a judgment for defendant, plaintiff appeals. Reversed and remanded, with instructions.

This was a suit by the state of Texas to recover of appellee $20.45, alleged to be the amount of taxes, together with interest and penalties thereon, and costs, assessed against Bill Williams for the year 1888, and against Rachael Williams for the year 1893, and to foreclose a lien to secure said taxes, interest, penalties, and costs, assessed against 50 acres of the D. Dyer survey in Cass county, owned by said Bill Williams and Rachael Williams in 1888 and 1893, and conveyed by them to appellee in 1903.

From findings made by the trial court it appears that $3.50 of the amount sued for represented poll taxes assessed against the Williamses for the years 1888 and 1893, $1 thereof represented taxes assessed against them as the owners during said years of certain personal property, and $4.46 thereof represented taxes for said years assessed against them as the owners of said 50 acres of land. The remainder of the amount sued for represented interest and penalties on said taxes and costs, which the state asserted it was entitled to recover.

Other findings made by said court were, quoting from the record:

(1) "That the 50 acres of land upon which plaintiff is seeking to foreclose a tax lien was legally assessed against Bill Williams for the year 1888 and against Rachael Williams for the year 1893; that said parties failed to pay the taxes for each of said years, and the same went delinquent and was regularly reported delinquent for each of said years; that everything in regard to assessing, rendering, listing, recording, and reporting was regularly done, and as required by law, except giving the required notice of the delinquency of said land."

(2) "That Goode Hunt acquired said 50 acres of land by a deed from said Bill Williams and Rachael Williams, dated February 24, 1903, and duly recorded in the county clerk's office, Cass county, on March 6, 1903, and that said Hunt has paid all taxes on said land for each and every year since he purchased the same, and has occupied the same all of said time."

(3) "That the tax collector of Cass county never gave Goode Hunt any notice of the delinquency of his said land for taxes, but in due time mailed a notice of such delinquency to Bill Williams and Rachael Williams, who owned the land when it went delinquent for the years 1888 and 1893."

(4) "That Cass county has a population of less than 50,000 inhabitants."

Having found facts as stated, the trial court concluded as matter of law:

(1) "That the giving of the notice by the tax collector to the record owner of delinquent lands by the 1st day of May, 1916, as provided by the Laws of the 34th Legislature, was a condition precedent to the bringing of a suit by the state, and collector of taxes for Cass county having failed to give such notice to said defendant Goode Hunt, the record owner of the land, the plaintiff cannot maintain this suit."

(2) "That the state has no lien on land which has gone delinquent for poll taxes, nor for taxes due by the delinquent on personal property."

In conformity to the conclusions reached by him, the trial court rendered judgment that appellant take nothing by its suit against appellee. Thereupon the state prosecuted this appeal.

Elmer L. Lincoln, of Linden, for the State.
O'Neal & Allday, of Atlanta, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] Section 1 of Act April 3, 1915 (Gen. Laws, p. 250, c. 147 [Vernon's Ann. Civ. St. Supp. 1918, art. 7687a]), made it the duty of the tax collector of Cass county, not later than May 1, 1916, to mail to the address of the "record owner" of the 50 acres of land referred to in the statement above "a notice showing the amount of taxes appearing delinquent or past due and unpaid against" said land, according to the delinquent tax records of said county on file in his office. We agree with the trial court that a discharge by the tax collector of the duty thus imposed upon him was a prerequisite to the existence of a right in the state to maintain its suit against appellee. State v. Seidell, 194 S. W. 1118. But we do not agree that it did not appear that the tax collector had not discharged the duty. The conclusion of the trial court that it did not so appear was predicated on his finding that the Williamses were not the "record owners" of the land within the meaning of the act. We think they were, and that the tax collector complied with the requirement of the law when he mailed notices to them as found by the trial court. As we view it, there is nothing in the language of the act which indicates that the Legislature meant by "record owner" the owner as shown by the deed records of the county, and not the owner as shown by the tax collector's records. On the contrary, we think the declaration in section 2 of the act (Vernon's Ann. Civ. St. Supp. 1918, art. 7687b) that "in making up the notices * * * provided for in section 1 of this act it shall be the duty of the tax collectors of the vari-

ous counties in the state to rely upon the delinquent tax records" compiled as specified, and the provision in the said section 2 that, "to enable the tax collector to comply with the provisions of section 1 of this act, it shall be the duty of the tax assessors of the various counties of the state to hereafter enter the post office address of each and every taxpayer after his name on the tax rolls" indicate that the Legislature meant by "record owner," as used in section 1, the owner as shown by the delinquent tax records kept in the tax collector's office. Therefore we are of opinion the trial court erred when he concluded that the state was not entitled to maintain the suit against appellee so far as it was for the taxes assessed against the 50 acres of land, together with interest and penalties which accrued thereon, and costs, and so far as it was to foreclose a lien on the said land existing to secure the payment of same.

[3, 4] But we agree with the trial court that the state did not have a lien on the land to secure the payment of either the poll taxes assessed against the Williamses or the taxes assessed against them on account of their ownership of personal property. The general rule is that taxes are never a lien on property unless expressly made so. 2 Cooley, Tax'n, p. 865. The lien created by section 15 of article 8 of the Constitution upon "landed property" is only for taxes assessed against such property; and so of the lien upon real property provided for by article 7528, Vernon's Statutes.

The judgment will be reversed, and the cause remanded, with instructions to the court below to ascertain the amount unpaid of the taxes assessed against the 50 acres of land for the years 1888 and 1893, together with the interest and penalties which have accrued on same, and the costs, and, having done so, to render judgment for the amount, and foreclosing the lien on said land in favor of the state, and directing the sale thereof to satisfy such taxes, interest, penalties, and costs.